**In re Kimberley Ann Light ADKINS, Debtor.**

**Kimberly Ann LIGHT, Plaintiff,**

**v.**

**Garner Aaron ADKINS, Defendant.**

**In re Phillip CANTRELL, Debtor.**

**Tammy Marie CANTRELL, Plaintiff,**

**v.**

**Phillip CANTRELL, Defendant.**

**Bankruptcy Nos. 391–11320, 291–10389. Adv. Nos. 392–0109A, 292–0068A.**

United States Bankruptcy Court, M.D. Tennessee.

Sept. 17, 1992.

Larry J. DeWare, Nashville, TN, for Kimberley Ann Light Adkins.

Mac E. Robinson, Jr., Nashville, TN, for Garner Aaron Adkins.

Steve Douglas, Crossville, TN, for Tammy Marie Cantrell.

Dale Bohannon, Cookeville, TN, for Phillip Cantrell.

## MEMORANDUM

GEORGE C. PAINE, II, Chief Judge.

### I. INTRODUCTION

Under consideration are two adversary proceedings to determine the dischargeability of obligations created by prepetition marital dissolution agreements (MDAs). Each agreement contains a clause that purports to render the obligations nondischargeable in bankruptcy. The question in both cases is whether the obligations are nondischargeable. Without the clauses, the court would embark on an analysis of the events and documents surrounding the divorce decree as directed by *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). The "nondischargeability" clauses, however, raise the preliminary issue of whether these clauses alter the court's analysis.

The following constitutes findings of fact and conclusions of law. Bankr.R. 7052.

### II. FINDINGS OF FACT

#### A. *Light*

In *Light v. Adkins*, the debtor seeks to have the obligation owed to her ex-husband declared dischargeable. Kimberley Light, the debtor, and Garner Aaron Adkins entered into a MDA. The divorce court incorporated the MDA into their divorce decree on September 12, 1989. *See* Final Decree

of Divorce, Case No. 89–1899, Fourth Circuit Court for Davidson County, Tennessee, September 12, 1989 [hereinafter Light MDA]. The only child of the marriage is in the custody of the debtor, and the MDA directed Adkins to pay the debtor $100 per week in child support. The MDA also provided for the division of the property, debts, and attorneys' fees of the parties; for the relations between the parties; and, for releases of various claims. Most importantly for the purposes of this adversary proceeding, the debtor agreed to retain a Ford Escort as her separate property, to title it in her name, and to hold Adkins harmless for costs incident to the ownership of the car. Conversely, Adkins agreed to the same conditions for the retention of his car. Each of the cars was jointly titled in the parties' names.

The MDA also included a clause in which both parties waived their right to alimony. Notably, the MDA lacked any provision for the payment of support to either spouse. Nevertheless, the MDA specified that:

[T]he parties understand and agree that their obligation to assume the payment of certain debts, the indemnification of, and/or holding the other party harmless from any liability thereof required by the terms of this agreement *shall be a support obligation under 11 U.S.C. § 523[ (a) ](5) and ... is nondischargeable in bankruptcy....*

Light MDA, at ¶ 11 (emphasis added). On November 26, 1991, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

### B. Cantrell

In the second case, the debtor's ex-wife brought an adversary proceeding to determine whether the debts assumed by the debtor in the MDA are non-dischargeable pursuant to § 523(a)(5). She also seeks relief from the automatic stay to commence a contempt action against the debtor in probate court.

The debtor, Phillip Cantrell, and his former wife, Tammy Cantrell, were having financial troubles prior to their separation and divorce. They had even considered filing for bankruptcy, and although Tammy wanted to file, the debtor did not. The parties were divorced on July 16, 1991. *See* Final Decree, Case No. 5992, Probate and Family Court, Cumberland County, Tennessee (July 17, 1991). Tammy obtained custody of the two minor children of the marriage.

In anticipation of the divorce, both Phillip and Tammy retained counsel. Settlement discussions ensued and according to Phillip's attorney, alimony was not requested, alimony was never discussed and alimony was never an issue. Phillip testified that Tammy did not want alimony, only fair child support, and after discussions between Phillip and his attorney, child support was agreed to at $100 a week, an amount required by the Department of Human Services Guidelines. They also agreed to divide up their debts, according to Tammy.

Tammy and Phillip entered a MDA, which included the following provisions:

*NON–DISCHARGEABILITY:* With respect to each party's responsibility for payment of certain debts and liabilities, and their obligation to hold the other harmless for the payment thereof, *the parties understand and agree that their obligation is a non-dischargeable debt under the Bankruptcy Code,* this obligation being part of the final financial support settlement for both parties....

*ATTORNEY FEES:* It is agreed that the Wife shall be responsible for the reasonable attorney's fees of [her attorney]..

*ALIMONY WAIVED:* Wife and Husband claim no alimony either pendente lite or permanent and waive any claim they might have thereto in any divorce action between them.

*DEBTS:* Husband agrees to pay the indebtedness owing to Cookeville Hospital, Cumberland Medical Center, Security Finance, Chevron, Dr. Reed and $130.00 to City Finance.

The Wife agrees to pay the indebtedness owing to Visa, J.C. Penny, Goodys, Peebles, and $70.00 to City Finance....

*CHILD CUSTODY:* ...

That the Husband agrees to pay $100.00 per week in child support....

*PERSONALTY:* The Husband shall receive the living room and bedroom suites.

The Wife shall receive the home and lot, paying the indebtedness owing on said home to Farmers Home Administration.

The Husband shall receive the vehicles and pay the indebtedness owing on said vehicles, holding the Wife harmless of said indebtedness....

Final Decree, Civ. No. 5992, Probate and Family Court for Cumberland County, Tennessee (July 17, 1991) (emphasis added) [hereinafter Cantrell MDA].

The language concerning nondischargeability was described by Phillip's attorney as "boilerplate" added by Tammy's attorney. Phillip's attorney did not discuss it with Phillip nor did he remove it.

Upon entering into the MDA, Tammy received an uncontested irreconcilable differences divorce.

Although the debtor thought he could pay the child support and debts covered by the MDA, it turned out that he could not. Consequently, he found it necessary to file the pending Chapter 7 case. At this time, his child support payments are current.

### III. CONCLUSIONS OF LAW

#### A. *Nondischargeability Clauses*

■ As noted above, the first question for the court is the effect of the nondischargeability clauses in the MDAs. For the reasons stated below, the court finds that they have no effect on this court's determination of nondischargeability.

First, it is for the federal bankruptcy court to determine the dischargeability of specific obligations claimed as alimony, support or maintenance under the Bankruptcy Code. The parties, or even a state divorce court, cannot decide this issue. *See Calhoun*, 715 F.2d at 1107. When examining debts derived from a divorce, the critical inquiry for this court is not whether the parties have given a certain name to an obligation, but whether that obligation is, in fact, in the nature of support. "Substance must prevail over form." *Id.* at 1109.

Second, enforcement of these provisions would damage the opportunity for each of these debtors to obtain a fresh start. *Calhoun* recognizes that the policy of protecting support recipients must be balanced against the strong bankruptcy policy of a debtor's fresh start. To accomplish this, the third prong of the *Calhoun* test requires the bankruptcy court to examine the reasonableness of the support obligation. The *Calhoun* court noted that this inquiry should be governed by "the principle that one cannot contract away bankruptcy rights...." *Id.* at 1110. The court continued:

We recognize the difficulty of making such a factual inquiry. However, *the alternative would be to permit the debtor to contract away the right to discharge in bankruptcy and the opportunity for a fresh start.* The inquiry will be limited to whether the amount agreed to is manifestly unreasonable in view of the earning power and financial status of the debtor spouse.

*Id.* (emphasis added).

■ Third, the state courts in both cases lacked jurisdiction to find the obligations nondischargeable not only because nondischargeability is an issue peculiar to bankruptcy, but also because a bankruptcy case had not been filed at the time of the state court judgments. *In re Cheripka*, 122 B.R. 33, 36–37 (Bankr.W.D.Pa.1990).

■ Fourth, the MDAs do not comply with the reaffirmation requirements of 11 U.S.C. §§ 524(c) and (d) because, among other things, no party to any MDA was a debtor at the time they entered into their contract and the agreements did not have the requisite statements concerning rescission, fully informed agreement, and undue hardship. *Id.* at 37. *See also In re Hunt*, 124 B.R. 200, 208 (Bankr.N.D.Tex.1991); *In the matter of Ethridge*, 80 B.R. 581, 586 (Bankr.M.D.Ga.1987). The court also finds that Congress designed the requirements

of §§ 524(c) and (d) to protect debtors from unknowingly waiving their fresh start. *Hunt*, 124 B.R. at 206. Such a carefully crafted structure cannot be overridden by a "boilerplate" clause inserted into a prepetition agreement.

Fifth, because these MDAs were entered prepetition, they fail the requirements of § 727(a)(10). Therefore, the debtors could not have waived their discharge of all debts. *See Cheripka*, 122 B.R. at 37.

Finally, this court finds that the three clauses considered above violate both Tennessee law and logic. Alimony and support payments, by their very nature, flow from one spouse to the other; they are not mutual obligations. The Tennessee Code provides that "the court may make an order and decree for the suitable support and maintenance *of either spouse by the other spouse....*" T.C.A. § 36–5–101(a)(1) (1991) (emphasis added). And yet the MDAs provide:

> [T]he *parties* understand and agree that their obligation to ..., indemnification of, and/or *holding the other party harmless ... shall be a support obligation....*

Light MDA, at ¶ 11.

> "With respect to each party's responsibility ..., and their obligation to hold the other harmless ..., the parties understand and agree that their obligation is ... part of the final financial *support settlement for both parties....*"

Cantrell MDA, at 4. These boilerplate clauses are not only contrary to the general intent of the remainder of the agreements, they are contrary to the principle they are attempting to invoke. Only one party is entitled to support from the other; both parties are not entitled to "support" from the other.

Clearly, this court cannot give effect to these clauses, and they do not affect this court's analysis of the MDAs. Therefore, the court must determine the dischargeability of the obligations under each MDA.

## B. *Calhoun Analysis*

Most debts are dischargeable in bankruptcy, *Ethridge*, 80 B.R. at 581, although there are exceptions. The Code excepts from discharge a debt owed "for alimony to, maintenance for, or support of [a] spouse or child" so long as it "is actually in the nature of alimony, maintenance or support." 11 U.S.C. § 523(a)(5).

■ This court must apply a three-pronged test to decide whether an obligation created by way of a divorce decree is nondischargeable under § 523(a)(5). *Calhoun*, 715 F.2d at 1109–10. First, this court must determine if "the state court or the parties to the divorce intended to create an obligation to provide support.... If they did not, the inquiry ends there." *Id.* at 1109. Next, if such an intent is found, this court must decide whether the obligation created by the divorce court "has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." *Id.* (emphasis original). Under the third prong, the obligation must not be "so excessive that it is manifestly unreasonable under traditional concepts of support." *Id.* at 1110.

■ Applying this text to the Light MDA, this court finds that both the language and structure of the Light MDA demonstrate no intent to create a support obligation. The MDA clearly provides for a child support obligation payable to the debtor and divides the property and debts of the parties, but there is no provision for support of either spouse. Furthermore, the parties expressly waived alimony. Light MDA, at ¶ 12.

Not only does the Light MDA itself fail to show the necessary intent, an examination of Tennessee law yields a similar result. *See* Tenn.Code Ann. § 36–5–101(d) (1991). Upon examination of the eleven factors listed in this subsection, the court finds that the relative financial situations, relative educational backgrounds, physical and mental conditions, separate assets, and standards of living as well as the moderate duration of the marriage of five and a half years do not favor an award of support for either spouse. Because this court finds no intent to create a support obligation, the

inquiry ends here. *Calhoun,* 715 F.2d at 1109.

The court notes that the presence of a hold harmless clause is not determinative; obligations that are subject to a hold harmless clause can be nondischargeable if they are in the nature of support. *Id.* at 1107. The obligations in this case, however, are not in the nature of support; rather they evidence a property settlement.

In the Cantrell MDA, the court finds a similar lack of intent to create a support obligation. Under this MDA, the parties divided property and debts, but they also waived alimony, paid their own attorneys' fees, and failed to include any support payments to either spouse. As for factors listed in the Tennessee statute, there is no evidence that either party has disparate earning capacity, obligations, education, training or separate assets; the marriage appears to have been relatively short; and although they owned a home, it was awarded to the creditor spouse under the MDA. Because this court finds no intent to create a support obligation in favor of either spouse, the nondischargeability inquiry ends here.

### IV. CONCLUSION

Though the two cases each have unique facts, circumstances and language, the court's message is clear. The underlying facts, as found by the federal bankruptcy court, are determinative, and statements that label obligations as nondischargeable are irrelevant. It is possible that a MDA could create a nondischargeable obligation when the MDA also contains a boilerplate nondischargeability clause, but the obligation would be nondischargeable because it is actually in the nature of support as defined by *Calhoun* and not because of the nondischargeability clause.

In consideration of the foregoing, the debt in the *Light* case is dischargeable, as is the debt in *Cantrell.* In addition, Tammy Cantrell's motion for relief from the stay, even though brought contrary to the Bankruptcy Rules, is DENIED, and there-fore, the *Cantrell* case will be DISMISSED.

IT IS THEREFORE SO ORDERED.