In re Roger FREEMAN, Debtor.

Roger L. FREEMAN, Plaintiff,

v.

Yvonne FREEMAN, Defendant.

Bankruptcy No. 93–21368–BKC–AJC.
Adv. No. 93–0613–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida.

March 23, 1994.

Jeffrey Solomon, Hollywood, FL, for plaintiff.

Andrew C. Rose, Rose, Rose & Rose, Fort Lauderdale, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING TRIAL

JACK B. SCHMETTERER, Bankruptcy Judge, Sitting by Assignment and Designation.

This Adversary Proceeding relates to debtor's Chapter 7 bankruptcy. The debtor/plaintiff brought this complaint to seek the dischargeability of debt owed his former wife. The issue is whether a $77,000.00 obligation agreed to under a Settlement Agreement related to their dissolution of marriage was intended to be support, and as such is non-dischargeable pursuant to 11 U.S.C. § 523(a)(5), or is a settlement and distribution of marital property, which is dischargeable. Following trial, the Court now makes and enters Findings of Fact and Conclusions of Law, pursuant to which the questioned debt is found non-dischargeable.

### FINDINGS OF FACT

Roger Freeman ("debtor" or "husband") and Yvonne Freeman ("wife") were married September 9, 1983. They had no children. The wife petitioned for Dissolution of Marriage on September 25, 1989 in the Circuit Court, Broward County, Florida. She named as defendants Roger Freeman and

their family-owned businesses.[1] In her petition for dissolution, Yvonne Freeman sought alimony, a special equity in the family-owned businesses, and an equitable distribution of property.

Following separation of the parties, the husband agreed to temporarily pay the wife $250.00 a week pending their divorce. He claimed intent to pay her that weekly sum toward the value of her share of the businesses until they were able to sell and divide those businesses. (Defendant's Ex. 15, Dep. of Roger Freeman, p. 15). He contends the "lump sum periodic and non-taxable alimony" provided for her in the Settlement Agreement constitutes a property distribution rather than alimony or support. His position is that, because neither party knew the worth of the businesses and it would be very expensive to ascertain, they agreed to the amount of $77,000.00 as a settlement of her claims against the businesses.

At the time of their separation, plaintiff terminated his wife's employment with the family businesses. She then had no money, assets, or means of support. She had only the personal effects she removed when vacating the marital premises. She could not afford her own apartment and lived with relatives. Mrs. Freeman had only a high school degree and no work experience other than being secretary and bookkeeper to the family businesses.

The husband and wife entered into the Settlement Agreement on June 14, 1990. Both debtor and the family businesses were then in uncertain financial condition. Both spouses were aware that his financial position was precarious and that he was under pressure from a number of creditors, including

the IRS. He claims the parties intentionally drafted the settlement agreement so it would not be a lump support settlement if he entered into bankruptcy, but his testimony on this point was neither credible nor clear.[2]

Prior to entering into the Settlement Agreement (the "Agreement"), the wife had filed motions to have a special master and a receiver appointed for the family business. However, those appointments were not made. She wanted the Settlement Agreement to provide for her in the form of alimony rather than a distribution of her share of the family businesses for a number of reasons. First, it would be difficult to establish the value of the businesses, even though they appeared to be doing well, because much of the business was off the books and under the table. Second, she was concerned that the husband would file for bankruptcy and discharge the debt if it was characterized as a property settlement. Third, the husband had a history of evading his alimony obligation to another former wife.

The Settlement Agreement was incorporated by reference in the final judgment dissolving their marriage, entered the same date as the Settlement Agreement, June 14, 1990. In pertinent part, paragraph 5(B) of the Settlement Agreement provided:

It is agreed by and between the parties that the Husband shall pay to the Wife in settlement of all claims, as lump sum periodic and non-taxable alimony, the amount of $77,000.00. The Husband shall pay $5,000.00 on June 15, 1990 and at the rate of $1,500.00 per month commencing July 15, 1990 and each month on the 15th of each month for twelve (12) months thereafter. The Husband shall pay commencing

---

1. The businesses named were F.P. Pump Manufacturing, Inc.; Freeman's Restaurant, Inc.; and Roger's Restaurant.

2. Debtor testified at his deposition (transcript admitted into evidence at trial):
 [W]hen this whole thing came about, the settlement agreement, [my attorney] mentioned to you in the early stages when we were trying to come up with the amount for settlement what [the business] was worth.
 Then he mentioned to you that, well, possibly I have a lot of bills facing me with the IRS, a whole lot of people, and then the question

came up that possibly I might file a bankruptcy. Okay. Then when you heard that, then in your mind, we got to figure out how we can word this thing, we don't want the lump sum settlement of what Mrs. Freeman is getting to come up—be involved if bankruptcy was filed.
 And ever since then you started trying to use the word alimony on it, to try and prevent that in case the property settlement—you was trying to protect the property settlement by putting alimony there. You know it and I know it and Luber told you sitting at the same table.
Dep. of Roger Freeman, p. 26 at lines 4–18.

August 15, 1991 and the 15th of each month thereafter for the remaining period of time $1,000.00 per month to the Wife until the $77,000.00 is paid in full.

It was to take five years for completion of payments under the Settlement Agreement. The Settlement Agreement provided that the lump sum alimony was not to stop upon the wife's remarriage or upon the death of either the wife or husband. The Settlement Agreement further provided that the husband could not modify the total amount of the lump sum alimony, but could modify the monthly amount and duration of payments if he filed for individual or corporate bankruptcy. The lump sum alimony was not dischargeable if the husband filed for bankruptcy.

Paragraph 5(B) of the Agreement also provided in part:

The Wife waives and relinquishes any right to receive any other type of lump sum alimony of any kind whatsoever for any reason whatsoever. The Wife understands and agrees that by accepting this type of alimony she waives and relinquishes the receipt of any other type or form of alimony, equitable distribution, or any other asset or benefit of any kind whatsoever except as otherwise provided herein. The payment of the $77,000.00 shall be the Wife's total monetary property settlement and equitable distribution.

Paragraph 5(A) of the Settlement Agreement provided for distribution of proceeds from the anticipated sale of the marital home. Paragraph 5(C) of the Settlement Agreement provided for disposition of the marital car. Paragraph 5(D) provided for division of their personal property. Paragraph 5(E) contained the wife's waiver of any interest in the husband's assets.

The Settlement Agreement also included debtor's undertaking to indemnify the wife if certain liabilities were assessed against her. Paragraph 5(F) provided for the husband to indemnify the wife against any liability assessed by the IRS. In paragraph 5(G), the husband agreed to hold the wife harmless for a debt due to Coastal Diesel, Inc. The husband sought to determine in this adversary proceeding that these two indemnification clauses are dischargeable. The wife admitted in her Answer to debtor's Adversary Complaint that both indemnification provisions are dischargeable, and the dischargeability of those provisions was not contested at trial.

Additional facts set forth in the Conclusions of Law will stand as additional Findings of Fact, and conclusions of law contained in the Findings of Fact shall stand as Conclusions of Law.

## CONCLUSIONS OF LAW

### Arguments of the Parties

The wife pleaded affirmative defenses of waiver and estoppel, asserted to preclude her former husband from discharging his obligation. The husband responds that the non-dischargeability provision in the Settlement Agreement is unenforceable as contrary to bankruptcy law and related public policy. He further argues that the wife has not satisfied the requirements for estoppel.

Debtor argues that the $77,000.00 liability created by the Settlement Agreement did not constitute alimony, maintenance, or child support and, as such, is not excepted from discharge pursuant to § 523(a)(5). First, he maintains that lump sum alimony is generally considered a property settlement under Florida law. The wife responds that lump sum alimony may provide for support under Florida law, citing *Lynch v. Lynch*, 437 So.2d 234 (Fla. 5th App.1983). Debtor argues that under Florida law lump sum alimony is generally considered a property settlement and not a payment for support, absent unusual circumstances. *Petticrew v. Petticrew*, 586 So.2d 508 (Fla.App. 5th Dist.1991). The wife argues that this case does present unusual circumstances. She testified that her husband had a history of evading court ordered alimony to another former wife. She and her divorce attorney testified that their main concern was that the payments of alimony be completely secured, so she was assured of receiving each payment. They felt lump sum alimony was a more certain means of payment.

The husband argues that the parties intended that the lump sum alimony serve as a distribution of the wife's share in their businesses. He states that such intent can be discerned from language found in the Settlement Agreement. The Settlement Agreement contains no express provisions for his former wife's support or maintenance. He argues that the handwritten provision making the alimony non-tax deductible indicates that the Settlement Agreement was intended as a property settlement. Additionally, he argues that the fact that the Settlement Agreement is non-modifiable supports the conclusion it was not intended for the wife's support.

The husband also argues that the monetary amount agreed upon by the parties was not based upon the wife's need for support. Rather, he suggests that the calculation of that amount was based on her desire to receive $1,000.00 per month for the 72 months she was married, plus $5,000.00.

The wife responds by pointing out that language in the Settlement Agreement clearly does contemplate providing her with support. She argues that the Settlement Agreement was non-modifiable to ensure that she would receive payment should her husband's financial condition change and he file in bankruptcy. She had insisted on this since he had a history of avoiding his support obligation to a prior wife. She also argues that any ambiguity created by the Settlement Agreement should be construed against the husband because it was drafted by his marital attorney.

She also argues that the Settlement Agreement could not be a property distribution because no one knew the value of the family businesses at the time of divorce. Her former husband and his marital attorney failed to give her any information to ascertain the value of the family businesses. The wife also argues that she clearly needed support at the time of the divorce because she was unemployed, needed to return to school, was living with family, and had substantial credit card debts.

### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157 and is referred under the District Court's general order of reference. The Bankruptcy Court has subject matter jurisdiction under 28 U.S.C. § 1344, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### Standard for Determining Non–Dischargeability of Debt

■■■ The issue of dischargeability is a matter of federal law governed by the Bankruptcy Code. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Orr,* 99 B.R. 109 (Bankr.S.D.Fla.1989). The creditor has the burden of establishing that a debt is non-dischargeable, including a claim of alimony or support. *In re Cassata,* 119 B.R. 280 (Bankr.M.D.Fla.1990). Title 11 U.S.C. § 523(a)(5) excepts a debt from discharge when it is:

> ... to a spouse, former spouse or child of the debtor for the alimony to, maintenance for, or support of such spouse or child in connection with a Separation Agreement, Divorce Decree, or other Order of court of record, determination made in accordance with State or territorial law by a governmental unit, or Property Settlement Agreement, but not to the extent that ...
>
> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

11 U.S.C. § 523(a)(5).

■■■ Because the policy behind the Bankruptcy Code is to provide a debtor with a fresh start, there is a presumption that a debt is dischargeable. *In re Armento,* 127 B.R. 486, 489 (Bankr.S.D.Fla.1991). *In re Carbia,* 113 B.R. 761, 762 (Bankr.S.D.Fla. 1990). The exceptions to discharge under § 523(a)(5) for alimony, maintenance, and support are strictly construed against the creditor, and the burden of proof to establish non-dischargeability is on the creditor. *Armento,* 127 B.R. at 489; *In re Campbell,* 74 B.R. 805 (Bankr.M.D.Fla.1987).

### The Wife's Waiver Defense is Misplaced

The wife pleaded affirmative defenses of waiver and estoppel. While she did not argue those following trial, neither did she waive them. Therefore, the inapplicability of those defenses must be discussed.

 Debtor did not waive his right to discharge the debt in the Settlement Agreement. Provisions in a property settlement agreement that obligations thereunder are non-dischargeable in bankruptcy are not specifically enforceable and in themselves are not binding. An agreement to waive the benefit of a discharge in bankruptcy is void, as against public policy. *In re Carbia,* 113 B.R. 761 (Bankr.S.D.Fla.1990); *In re Markizer,* 66 B.R. 1014 (Bankr.S.D.Fla.1986); *In re Kriger,* 2 B.R. 19, 23 (Bankr.Ore.1979); *Fallick v. Kehr,* 369 F.2d 899, 906 (2d Cir. 1966). Other courts have recognized that a pre-petition state court waiver of dischargeability violates the Bankruptcy Code. *In re Minor,* 115 B.R. 690 (D.Co.1990), *In re Adkins,* 151 B.R. 458 (Bankr.M.D.Tenn.1992).

 Moreover, the state court lacked jurisdiction to find the debtor's obligation under the Settlement Agreement non-dischargeable because a bankruptcy case had not been filed at the time of the state court judgments. *See Adkins,* 151 B.R. at 461; *In re Cheripka,* 122 B.R. 33, 36–37 (Bankr.W.D.Pa.1990). Thus, the husband could not have waived his right to discharge the debt.

However, as discussed below, the wording of the Settlement Agreement can indicate intent of the parties, and all circumstances, including the wording, aid the Court in determining that intent.

### Her Estoppel Defense is Also Misplaced

 The wife also pleaded that estoppel precludes the husband from characterizing the $77,000.00 debt as a property settlement rather than as alimony. She apparently relied on the Settlement Agreement's reference to the debt as alimony and the parties' reference to the debt as alimony in subsequent proceedings.

 To find collateral estoppel,

(1) the issue at stake must be identical to the one involved in the prior litigation;

(2) the issue must have been actually litigated in prior litigation; and

(3) a determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier action.

*In re Ikner,* 883 F.2d 986 (11th Cir.1989); *In re St. Laurent,* 108 B.R. 805 (Bankr.S.D.Fla. 1989). The burden is on the party asserting issue preclusion. Thus, lack of proof here of actual litigation before the state court is sufficient to warrant denial of collateral estoppel. *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982).

 Moreover, when a Bankruptcy Court determines dischargeability issues, it is for that court to determine the dischargeability of specific obligations claimed as alimony, support, or maintenance under the Bankruptcy Code. *Adkins,* 151 B.R. at 461. Neither the parties nor the state divorce court can definitively decide this issue. *Id.;* *In re Calhoun,* 715 F.2d 1103, 1107 (6th Cir.1983). Labeling payments as "alimony" in a settlement agreement upon dissolution of marriage is not incontestably determinative of the nature of such awards, for non-dischargeability purposes. *In re Froman,* 43 B.R. 609 (Bankr.S.D.Fla.1984). Likewise, the fact that a state court has used or approved such language is not determinative, since federal law prevails in determining whether an obligation is alimony, support, or a property settlement. *Carbia,* 113 B.R. at 763. Thus, the Bankruptcy Court must determine whether an agreed payment was intended by the parties to be alimony or a property distribution. The Court is not bound by prior characterizations of the obligation as alimony or support under state law. *In re Harrell,* 754 F.2d 902 (11th Cir.1985). The Court must look beyond the label attached to an obligation in a Property Settlement Agreement to examine its true nature. *In re Gianakas,* 917 F.2d 759 (3d Cir.1990). Accordingly, the estoppel defense is not valid.

Once again, however, as discussed below, the wording of an agreement can shed light

on intent of the parties, even though not specifically determinative in bankruptcy.

### The $77,000.00 Obligation Had The Character of Support and Is Non–Dischargeable

Defendant has argued under Florida law that lump sum alimony is generally considered to be a property settlement. However, this is not the case, as demonstrated by *Lynch v. Lynch,* 437 So.2d 234 (Fla. 5th App.1993), which provided:

> This Court has previously held, and we again hold that there are two types of lump sum alimony:

> The first type relates to support and occurs where the Court finds from circumstances sufficient need on the part of one spouse and sufficient ability to pay on the part of the other spouse to warrant permanent alimony and also further finds that unusual circumstances exist justifying the determination that the alimony should be in the form of a lump sum award rather than being paid periodically. The second type, or use of, lump sum alimony relates to making an equitable division of marital property.

*Id.,* 437 So.2d at 235. It was further held in *Ledford v. Ledford,* 469 So.2d 828 (Fla.App. 1985), that "[l]ump sum alimony is a viable tool for awarding needed support to a spouse as well as a means for making an equitable division of marital assets."

Lump sum alimony is recognized in Florida Statute § 61.08(1), which authorizes a court to "order periodic payments [of alimony] or payments in lump sum or both." The Florida Supreme Court stated in *Claughton v. Claughton,* 393 So.2d 1061 (Fla.1980),

> ... that lump alimony, under appropriate circumstances, is still a viable tool for support purposes, in addition to which, it may also be used as a vehicle by which one spouse may be awarded an equitable share of the assets of the marriage resulting from his or her marital contribution.

■ From the foregoing, it is clear that lump sum alimony may be either for support or division of property under Florida law.

■ In determining whether an agreed debt is dischargeable under 11 U.S.C. § 523(a)(5), inquiry is to the actual situation and intent of the parties when the agreement was made. *Carbia,* 113 B.R. at 763–64; *Armento,* 127 B.R. at 489–90. Whether an obligation is in the nature of alimony, maintenance, or support, as distinguished from a property settlement, depends on a finding as to intent of the parties at the time of the Settlement Agreement. *Gianakas,* 917 F.2d at 762–63.

■ The bankruptcy judge may review many factors when determining whether an obligation is in the nature of alimony or support:

1. Length of the marriage;
2. Whether the obligations are subject to contingencies such as remarriage or death;
3. Whether there are minor children;
4. Whether the payment appears to balance disparate income;
5. Whether the obligation is payable as a lump sum or periodically;
6. Whether there is an actual need for support;
7. Whether the award is modifiable;
8. The section of the agreement where the clause is included.

*See Gianakas,* 917 F.2d at 762–64; *Carbia,* 113 B.R. at 762–63; *In re Hall,* 119 B.R. 272, 275–76 (Bankr.M.D.Fla.1990); and *In re Miller,* 8 B.R. 174, 176 (Bankr.N.D.Oh.1981).

■ However, three factors are said to predominate in this analysis, those being:

(1) the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary;

(2) financial circumstances of the parties at the time of the settlement; and

(3) an obligation that serves to maintain daily necessities such as food, housing, and transportation is indicative of a debt intended to be in the nature of support.

*Gianakas,* 917 F.2d at 762–64.

A spouse who is given more property usually needs less support and vice-versa. Henry J. Sommer, Margaret Dee McGarity, *Col-*

*lier Family Law and the Bankruptcy Code,* ¶ 6.04[1] at p. 6–21 (Lawrence P. King ed. 1993).

An example of this analysis is set forth in *In re Carbia,* 113 B.R. 761 (Bankr.S.D.Fla. 1990). There the wife was employed at the time of divorce, was capable of providing for herself, and the children were provided for separately. The court found that the lump sum provided in the marital settlement agreement was not support but rather was a property distribution intended to reimburse the wife for her contributions toward the family home, which was lost to foreclosure during the marriage. *Carbia,* 113 B.R. at 763. The Court found that the distribution was not based on need for support because the husband and wife had approximately equal incomes at the time the agreement was entered into. *Id.*

▇ Applying the foregoing principles to the evidence here is not like placing pieces of a puzzle into holes where they fit neatly. There are arguments to be made on the husband's side, but the wife's case is supported by a clear preponderance of evidence.

When the Settlement Agreement here was signed, the marriage had lasted approximately six years; the wife had been without support from her husband for a number of months; had filed a Motion for Temporary Support in vain; had left the marital domicile and was living with relatives; and was not gainfully employed. The only work she did during the marriage was for her husband, employment she lost upon their separation. She had no liquid assets of her own and had no viable means of self-support. She was not able to determine whether the family businesses had any value. The husband maintained throughout the divorce proceedings that their businesses had no value.

While the couple had no children, the intent of the parties at the time the Settlement Agreement was entered into was to provide support for the wife. The Agreement provided in paragraph 13:

13. *Voluntary Execution.* The Wife acknowledges and represents:

... (c) That the provisions of this Agreement *for the support and maintenance of*

*the Wife and the division of the property* are fair, adequate, and reasonable, and commensurate with the needs and best interests of the Wife and the Husband's ability.

(Emphasis added.)

Thus, both support and division of property were intended to be settled in the agreement.

After termination of their six-year marriage, the wife had no means of providing for her daily necessities such as food and shelter. She was to receive one-half of the net proceeds upon the sale of the marital home as a division of property. But the Settlement Agreement contains no provisions for her financial support other than the $77,000.00 for lump sum alimony. She received no other marital assets except for her personal effects. The wife lacked work experience beyond employment with the family businesses. She was a displaced worker in need of training and education to enable her to support herself. During the marriage, the family businesses had provided both spouses with a very comfortable lifestyle. Following the divorce, the husband continued to own and operate the family businesses which were anticipated to continue generating a comfortable cash flow for him, without regard to whether they had any transferable "value" if sold. Thus, the award of $77,000.00 in support to the wife was necessary to balance the financial position of the two parties.

The evidence also explained why Mrs. Freeman wanted alimony in the form of a lump sum. She was living with her husband prior to their marriage, at which time the husband was under court order to pay alimony to his previous wife. The wife and her divorce attorney (who had also represented the husband's former wife in her divorce from debtor) testified and it is found that, more likely than not, in the husband's prior divorce proceeding, he had obfuscated assets and income to avoid paying support. Plaintiff also boasted how he had worn down his prior wife until she had abandoned efforts to obtain alimony. The wife here and her divorce attorney testified that their goal was to structure the Settlement Agreement in a

manner which would prevent the same problems from arising with her. Moreover, debtor had not produced records enabling valuation of the family businesses. It is clear that Mrs. Freeman and her counsel insisted on lump sum alimony as an undertaking to support her and to avoid losing that undertaking in bankruptcy.

The husband points to handwritten modifications of the Property Settlement Agreement in which he agreed not to take an income tax deduction for the lump sum alimony payments. He suggests that this supports a premise that the money was intended as a property settlement rather than alimony, which is deductible. *See* 26 U.S.C. § 71. While that drafting is a factor weighing in the husband's favor, it does not outweigh the strong evidence referred to showing that support for her was intended.

The husband also argues that the lump sum alimony was the wife's share of their businesses. He testified that he considered the restaurants to be owned by both him and his wife. The husband and his marital attorney also testified that there was potential to earn a lot of money from the restaurant and that they independently determined the value of the businesses. They decided that $77,000.00 represented the wife's interest in the marital assets, which consisted primarily of the future goodwill of the restaurant. However, there was no corroboration (such as business books, accounts, records, or accounting testimony) to support such a "valuation."

It is true that the wife originally sought an equitable distribution of a share of the businesses. However, she abandoned any claim of right to the businesses, knowing that she would never be able to prove whether the businesses had any measurable or transferable value. In fact, from the evidence it is clear that the businesses had no discernable or transferable value and that it was the husband who had a knack for attracting customers to the family-owned nightclub. From his continued personal operation of the club, he could foreseeably continue to receive a cash flow from which to pay support to her. Another manager could not be assured of such success. He gave the club class and

style that attracted customers. Panache is not always a transferrable asset, and it was not here.

The wife and her divorce counsel never received from the husband or his marital attorney documentation as to value of the businesses, although they sought such documents through a state court Request to Produce and Interrogatories. Nor did this Court receive such documentation in evidence. The May 1990 Financial Affidavit of the husband showed his income to be approximately $3,150.00 per month, yet failed to list any business as an asset of value. The financial affidavit further reflected the husband to have a negative net worth in the amount of approximately $260,000.00. Thus, the husband's contention that the $77,000.00 represented his estimation of the wife's business share is not credible. At varying times, each party has argued that they could not determine the value of the businesses. In state court, Mr. Freeman and his attorney even argued that the restaurant was without value and heavily in debt.

Moreover, the letter from the husband's marital attorney to her divorce attorney, dated May 25, 1990, shows the true intent of the parties during their negotiations. The letter states:

> I have written the agreement so that she is being paid alimony ... However the alimony clause makes the alimony not dischargeable in bankruptcy. Therefore, the worst possible result is that if Roger declares bankruptcy, he will be able to wipe out the Coastal debt, not the alimony to the wife.

Def. Ex. 12.

While the Settlement Agreement went through several further drafts, these changes did not alter this concept explicitly.

The husband has argued that the Settlement Agreement provided no express statement that the payments were to be for the support of the wife.

To the contrary, as previously noted, the Agreement provided in Paragraph 13(c):

> that the provisions for this Agreement for the support and maintenance of the wife and the division of the property are fair,

adequate, reasonable, and commensurate with the needs and best interests of the wife and the husband's ability.

Thus, the Settlement Agreement itself showed intent that its provisions were to include both "support and maintenance" and "division of property." In context, the division of net proceeds from the sale of their home was the property division, the $77,000.00 was the intended support.

The wife testified credibly that she was in need of such support when the Settlement Agreement was signed. It is well to emphasize that, prior to and during the parties' six-year marriage, she had worked for the husband as a bookkeeper/secretary in the husband's different corporate business interests, which included a pump company and a club-restaurant. When the parties separated in the latter part of 1989, her employment with the businesses was terminated, and she received $250.00 per week from the husband as temporary support for a number of months. At the separation, she had no money or assets of her own, other than clothing and the small amount of furniture which she removed from the parties' marital home. She was in debt on credit cards and had no other assets of her own or viable means of support.

The husband also argues that the provision stating that the lump sum alimony is non-modifiable indicates that it is a property settlement. He argues that, if the amount were intended to provide simply for her support, it would terminate upon her death or would be modifiable if she suffered some disability. He argues that his former wife and her counsel agreed to have a vested property right, so the husband could not modify the obligation due to a change of circumstances, and she must accept the risks as well as the benefits of accepting such an agreement. That argument proves too much. If she could not modify, the only risk she took was being blocked from seeking more support if she became disabled. However, in ¶ 3 of the Final Judgment, the state court "retains jurisdiction ... for the purpose of enforcement and/or modification if such is deemed proper by the Court." Their apparent right to seek modification is consistent with an award of support. Moreover, the Agreement provided

that he could only modify the rate of payment if he went into bankruptcy, but not the total amount due. It was clearly intended that he could not discharge the $77,000.00 in bankruptcy, and that reflected the support purpose of this obligation.

The wife and her counsel insisted in negotiations that the lump sum alimony be non-modifiable because they wanted to preclude the husband from evading his support obligations as he had done in the past to a former wife. Their reason for classifying the alimony as lump sum alimony was because they wanted to ensure payment. The husband cannot now make a credible argument that the non-modifiability of the obligation turns it into a property settlement, when his conduct caused his former wife to adopt a defensive posture and insist on a provision making the obligation non-modifiable. Under the circumstances, the wife's concern with ensuring a steady stream of support was reasonable. She cannot be faulted for taking steps which she perceived necessary to protect her economic interests.

The evidence shows that the parties repeatedly attempted to negotiate a lump sum settlement. First, the wife demanded $100,000.00. He later offered $50,000.00, and they finally settled at $77,000.00. The husband testified that the wife's calculation of the amount for the final settlement was based upon her desire to receive $1,000.00 per month for the 72 months they were married plus $5,000.00 down. However, he offered no persuasive evidence to corroborate this assertion. This testimony is not found credible given the respective economic positions of the parties. Nor, having seen the parties testify, does the Court find him a credible witness, while she was credible and corroborated by other evidence.

### CONCLUSION

The Court finds and concludes that the Settlement Agreement was intended to balance the disproportionate income of the husband and wife. Under these circumstances, the provision for payment of $77,000.00 was intended to be a form of alimony and support and that debt is therefore non-dischargeable.

Accordingly, judgment will separately be entered for defendant that the obligation due to her under Paragraph 5(B) of the Agreement is not dischargeable under 11 U.S.C. § 523(a)(5). However, judgment will enter for plaintiff as to the undisputed dischargeability of plaintiff's obligations under paragraphs 5(F) and (G) of the Settlement Agreement.