**In re Barbara Jean BRACKETT, Debtor.**

**No. 98–09497–3P7.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 6, 2001.

Robert Altman, Palatka, FL, for trustee.

Aaron R. Wolfe, Daytona Beach, FL, for debtor.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S OBJECTIONS TO DEBTOR'S AMENDED CLAIM OF EXEMPTIONS*

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Trustee's Motion to Compel Debtor to Turnover Property of the Estate and the Trustee's Objection to Debtor's Amended Claim of Exemptions for two IRA Accounts and monthly payments of $200 received by Debtor from her ex-spouse. On November 1, 2000, the Court held a hearing at which the parties presented testimonial evidence. The Court provided the parties with the opportunity to tender briefs in support of their arguments. Upon the evidence presented and the parties' submissions, the Court enters the following Findings of Fact and Conclusions of Law.

### *FINDINGS OF FACT*

1. On November 5, 1998, Barbara Jean Brackett ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

2. Prior to Debtor's bankruptcy filing, Debtor and her former husband ("Morgan") filed for divorce in Orange County, Florida.

3. On June 19, 2000, Debtor and Morgan entered into a divorce agreement ("Divorce Agreement") which resulted in the entry of a Final Judgment of Dissolution of Marriage ("Final Judgment") on August 15, 2000.

4. The Divorce Agreement, which was incorporated into the Final Judgment, requires that Morgan transfer his interests in the Mutual Beacon Fund

IRA and the Gabelli Fund IRA (the "IRA Accounts") containing approximately $25,050 to Debtor. (Tr.'s Ex. 1.)

5. Additionally, the Divorce Agreement entitles Debtor to collect monthly payments of $200 (the "Payments") from Morgan "to cover educational and retraining costs to continue indefinitely for life in lieu of one lump settlement at present time and to satisfy debt incurred during marriage." (Tr.'s Ex. 1.)

6. The Divorce Agreement also includes provisions which provide Debtor with medical coverage and payments for any medical expenses not covered by insurance. (Tr.'s Ex. 1.)

7. At the hearing held on November 1, 2000, Debtor testified that she received $1800 a month from Morgan and that she is not employed and needs additional support for medical purposes, personal debts, and college loan repayments.

8. The Trustee argues that the IRA Accounts and the Payments are assets of the Chapter 7 bankruptcy estate and are subject to the Trustee's turnover power under 11 U.S.C. § 542. Debtor contends that the IRA Accounts are exempt pursuant to Fla.Stat. chs. 222.201 and 222.21 and 11 U.S.C. § 522(d)(10) and that the Payments are also exempt pursuant to Fla.Stat. ch. 222.201 and 11 U.S.C. § 522(d)(10).

### CONCLUSIONS OF LAW

[1–3] The commencement of a bankruptcy case creates an estate which is comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1) (West 2001). Determination of whether a debtor's interest in property constitutes property of the estate is a question of federal law. "However, unless there is a strong countervailing federal interest, the actual existence of a debtor's right in property, including its nature and scope, is determined by looking at state law." *In re Greer*, 242 B.R. 389, 394 (Bankr.N.D.Ohio 1999) (quoting *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). The parties do not dispute that the IRA Accounts and the Payments are property of the estate. *See* Fla.Stat. ch. 61.075(5)(a) (2000).

A debtor may seek to exempt property of the estate through federal or state law. 11 U.S.C. § 522(b) (West 2001). "An exemption is an interest [that is] withdrawn from the estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen*, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). Section 522 allows debtors to elect either federal or state exemptions. However, where a state "opts out" and prohibits the availability of federal exemptions, a debtor is limited to only those exemptions available under state law. § 522(b). Florida has "opted out" of the exemption scheme provided by the Bankruptcy Code and has established its own set of exemptions that are available to debtors domiciled in Florida. Fla. Stat. ch. 222.20 (2000). In so doing, Florida has enhanced the exemption privileges ordinarily offered to debtors by the Bankruptcy Code. Consequently, a Florida debtor may exempt property that is qualified under § 522(d)(10) as well as any "pension money and retirement or profit-sharing benefits." Fla.Stat. ch. 222.21(2)(a) (2000). Debtor has claimed the IRA Accounts and the Payments as exempt pursuant to this authority.

### A. Trustee's Objection to Debtor's Exemption for the IRA Accounts

The Trustee objects to Debtor's claim of exemption for the IRA Accounts and argues that the Final Judgment issued by the state court is not a qualified domestic relations order ("QDRO")[1] thereby

---

1. A "qualified domestic relations order" is a domestic relations order which creates or rec-

ognizes the existence of an alternate payee's right to, or assigns to an alternate payee the

preventing Debtor from claiming them as exempt. Where a party objects to a debtor's claim of exemption, the burden rests upon the objecting party to prove that the exemption is not properly claimed. Fed. R.Bankr.P. 4003(c). "This burden is satisfied where the objecting party introduces evidence which rebuts the prima facie effect of the claim of exemption. Such a rebuttal shifts the burden to the debtor to demonstrate that the exemption is proper." *Lester v. Storey (In re Lester)*, 141 B.R. 157, 161 (S.D.Ohio 1991) (citations omitted).

 The plain language of Fla.Stat. ch. 222.21 clearly provides that it can be used to exempt a plan qualified under §§ 401(a), 403(a), 403(b), 408 or 409 of the Internal Revenue Code. Fla.Stat. ch. 222.21(2)(a) (2000); *In re Ewell*, 104 B.R. 458, 460 (Bankr.M.D.Fla.1989). Where the plan belongs to an alternate payee, however, the property is exempt only if a QDRO has first been entered. Fla.Stat. ch. 222.21(2)(b) (2000). A review of the relevant case law indicates, however, that ch. 222.21(2)(b) requires a QDRO only where an ERISA-qualified plan is at issue.[2] *In re Cason*, 211 B.R. 72, 73 (Bankr. N.D.Fla.1997) ("Since this is not an ERISA-qualified plan, the entry of a QDRO ... is unavailable, and unnecessary."); *DeSantis v. DeSantis*, 714 So.2d 637, 638 (Fla.Dist.Ct.App.1998) (concluding that a QDRO "relate[d] to [a] provision of child support, alimony, or marital property rights to a spouse, former spouse, child or other dependent of a participant in *an ERISA plan.*") (emphasis added); *Bd. of Pension Trustees of the City Gen. Employees Pension Plan v. Vizcaino*, 635 So.2d 1012, 1014 (Fla.Dist.Ct.App.1994) ("Section 222.21(2) provides merely that, while sums payable to a debtor *from an*

*ERISA-qualified plan* are generally exempt from creditors' claims, they are 'not exempt from the claims of an alternate payee under a qualified domestic relations order.' ") (emphasis added).

 It is unclear from the evidence and testimony presented whether the IRA Accounts are ERISA-qualified. Rule 4003(c) places the burden upon the Trustee to prove that the IRA Accounts are ERISA-qualified and mandate a QDRO in order for them to be exempt from the reach of creditors. "Under Bankruptcy Rule 4003(c), the burden of proof is on the party objecting to the exemption.... Where an issue is left in doubt by the proof so that the court would be required to speculate, the party upon whom the burden of proof ultimately rests must lose." *Lester*, 141 B.R. at 162 (quoting *In re Blizard*, 81 B.R. 431, 432 (Bankr. W.D.Ky.1988)). In the absence of any evidence presented by the Trustee that the IRA Accounts are ERISA-qualified, the Court finds that a QDRO is unnecessary. *See Lester*, 141 B.R. at 162 ("[I]n the face of a reasonable claim and the absence of any evidence to the contrary, the burdened party must lose."). Accordingly, Debtor is allowed to claim the IRA Accounts as exempt.

**B. Trustee's Objection to Debtor's Exemption for the Payments**

 11 U.S.C. § 522(d)(10)(D) provides an exemption for a debtor's right to receive "alimony, support or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(10)(D) (West 2001). However, where a property settlement is at issue, "neither state law nor § 522(d)(10) pro-

---

right to, receive all or a portion of the benefits payable with respect to a participant under a plan. 29 U.S.C. § 1056(d)(3)(B).

**2.** Additionally, the exemptions that are provided under Fla.Stat. ch. 222.21 are not limited to ERISA-qualified plans. Consequently,

where a plan does not qualify as a retirement plan under ERISA, it may still be exempt under Fla.Stat. ch. 222.21 as long as it meets the requirements established by the Internal Revenue Code. *In re Luttge*, 204 B.R. 259, 263 (Bankr.S.D.Fla.1997).

vides authorization for the debtor to claim such property interest as exempt." *In re Ellertson,* 252 B.R. 831, 832 (Bankr. S.D.Fla.2000). The Trustee has raised an objection to Debtor's claim of exemption for the Payments arguing that Debtor has not shown that the money is necessary for her support. The Trustee contends that the Payments are therefore a property settlement and belong to Debtor's bankruptcy estate.

 Debtor, however, asserts that the Payments are exempt under § 522(d)(10)(D) and Fla.Stat. ch. 222.201. She claims that the characterization of the Payments as "Direct Financial Support" rather than as "Division of Assets" in the Divorce Agreement leads to the conclusion that the award is alimony. The labels used in a contract are not dispositive of the nature of the obligation and courts are not bound by the terminology of the parties to the agreement. *Freeman v. Freeman (In re Freeman),* 165 B.R. 307, 312 (Bankr. S.D.Fla.1994) (quoting *In re Froman,* 43 B.R. 609 (Bankr.S.D.Fla.1984)). Rather, courts must examine the true substance of the obligation. Accordingly, despite the agreement of the parties, the Court must independently determine whether the Payments constitute alimony or a property settlement. *Tarbox v. Tarbox (In re Tarbox),* 234 B.R. 832, 836 (Bankr.S.D.Fla. 1999); *Freeman,* 165 B.R. at 312.

 This Court has held that when determining whether an award constitutes alimony or a property settlement under § 522(d)(10)(D), the facts must be "examined in accordance with § 523(a)(5) [dischargeability] principles." *In re Sheffield,* 212 B.R. 1019, 1020 (Bankr.M.D.Fla.1997) ("Logic dictates that what constitutes alimony for purposes of § 522(d)(10)(D) should involve the same criteria."). Six factors have traditionally been used when evaluating the nature of an obligation:

1. Whether the payment is subject to contingencies, such as death or remarriage;

2. Whether the payment was fashioned in order to balance disparate income of the parties;

3. Whether the payment is payable in installments or in a lump sum payment;

4. Whether there are minor children involved in a marriage requiring support;

5. The respective physical health and education of the spouses; and

6. Whether there was need for support at the time of the circumstances of the particular case.

The Court examines each factor below to determine the merits of the Trustee's objection to Debtor's claim of exemption for the Payments.

### 1. Contingencies on Payment

 The Divorce Agreement explicitly states that the Payments are tied to the life of the Debtor indicating that the Payments were intended as alimony. *See Adler v. Nicholas,* 381 F.2d 168, 169 (5th Cir.1967) (holding that there is a clearly expressed intention to treat payments as alimony where an agreement indicates that payments shall terminate upon the death of the recipient spouse).

### 2. Income of the Parties

At the time of the Divorce Agreement, Debtor was unemployed while Morgan received an annual income of $26,470 and a military pension of $24,000. The disparate income of the parties was equalized through support payments and a property settlement to Debtor. The Payments, however, were not necessary to further balance income disparities. The Trustee demonstrated that Debtor receives at least $1600 a month,[3] along with other benefits, which are sufficient to provide Debtor with a comfortable lifestyle. This factor sup-

---

**3.** This figure does not include the $200/month payment at issue.

ports the conclusion that the award is a property settlement.

### 3. Pattern of Payment of Debt

This Court has held that "where an obligation is payable in installments over a substantial period of time, courts are inclined to rule that alimony and support, rather than a property settlement, was intended." *Bowsman v. Morrell (In re Bowsman)*, 128 B.R. 485, 487 (Bankr. M.D.Fla.1991) (quoting *In re Henry*, 5 B.R. 342, 343 (Bankr.M.D.Fla.1980)). In the present case, the Divorce Agreement requires Morgan to pay Debtor $200 a month over the course of her lifetime. The structure of the obligation suggests that the money is intended to provide maintenance and support to the Debtor. However, the Divorce Agreement states that the Payments are "in lieu of one lump sum settlement at present time." (Tr.'s Ex. 1.) A lump sum payment generally suggests a property settlement. *Burgess v. Henrie (In re Henrie)*, 235 B.R. 113 (Bankr.M.D.Fla.1999) (quoting *Henry*, 5 B.R. at 342). It appears that Debtor and Morgan intended a lump sum settlement but found an installment payment to be more convenient. Language referring to a "lump sum settlement" would not otherwise be used in the contract. The third factor is therefore indicative of a property settlement.

### 4. Need for Child Support

At the time of the divorce, Debtor's children were no longer minors and there is no indication that the children relied upon Debtor for support. This factor indicates that the Payments are a property settlement.

### 5. Health and Education of the Parties

No evidence was produced regarding the health and education of Morgan at the hearing. Debtor, however, testified that she suffered from medical problems and needed "additional support" for that reason. Debtor's position is not credible since she receives adequate medical coverage in the Divorce Agreement. Not only does Morgan maintain Debtor's medical insurance, he has also agreed to bear any costs that exceed insurance coverage. (Tr.'s Ex. 1.) It is unlikely, therefore, that Debtor will need additional funds to cover her medical expenses. No testimony was presented as to the education of either Debtor or Morgan, although Debtor must have some college education since she owes college loans. The fifth factor suggests that the Payments were intended as a property settlement.

### 6. Need for Spousal Support

Although Debtor undoubtedly needs spousal support to some degree, whether an additional $200 per month is necessary for her support is questionable. "If the obligations under consideration relate to the preservation of an asset, which is necessary to preserve the lifestyle of a spouse, particularly to keep a roof over her head, [it] would clearly be an obligation in the nature of support...." *Coverdale v. Coverdale (In re Coverdale)*, 65 B.R. 126, 129 (Bankr.M.D.Fla.1986). Debtor offered conflicting testimony regarding the purpose of the Payments. At first, she stated the Payments were support for "medical reasons." During cross-examination, she testified that the Payments were for "personal debts." Finally, on redirect, she explained that the Payments were intended to repay her "college loans."

The Court looks to the Divorce Agreement to clarify the inconsistent testimony of Debtor. The contract explicitly states that the Payments are to be used for educational, retraining and debt repayment purposes. However, when asked if she was working, Debtor simply responded "no" and did not indicate an intent to return to either work or school. Reading the Divorce Agreement and Debtor's testimony together, the Court concludes that the Payments were only intended to repay loans belonging to the Debtor rather than to provide her with rehabilitative support.

Such support is unnecessary, especially in light of the fact that the Divorce Agreement allocates $4100 towards repayment of school loans with funds received from the Gabelli Fund IRA. Additionally, Debtor's schedules only show two outstanding school loans amounting to approximately $2649. The Court finds that a monthly payment of $200 for the duration of Debtor's life is excessive considering the extent of her loans.[4] *See Adler,* 381 F.2d at 171 ("Payment of a continuing obligation after the wife's need for [such] support terminates strongly supports an intent to divide property."). Consequently, this factor also indicates that the Payments are a property settlement.

After reviewing the six factors relevant to the Court's determination, it appears that only the first factor supports a finding that the Payments were intended as alimony. The balance of the factors strongly suggests that Debtor and Morgan intended the money for debt repayment and the Payments are therefore a property settlement.

### CONCLUSION

The Court finds that the Trustee has not carried his burden in showing that the IRA Accounts are non-exempt property and Debtor has therefore properly claimed the IRA Accounts as exempt pursuant to Fla.Stat. ch. 222.21. However, the Trustee has established that the Payments are property of the estate and Debtor is required to turn them over to the Trustee pursuant to 11 U.S.C. § 542. A separate judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

---

4. The Court acknowledges that the Divorce Agreement lists a loan from USA Student Services in the amount of $18,960. However, this loan is not listed on any of Debtor's schedules and the creditor has not filed a

claim. Furthermore, Debtor did not mention the loan at the hearing, nor did she offer any evidence to prove that such a loan even existed.