484 So.2d 1308 (1986)
Margot Anne Raiche KIRCHEN, Appellant,
v.
Richard Francis KIRCHEN, Appellee.
No. 85-1173.
District Court of Appeal of Florida, Second District.
March 5, 1986.
Ernest M. Jones, Jr., Lakeland, for appellant.
Ronald L. Clark of Murphy & Clark, P.A., Lakeland, for appellee.
RYDER, Chief Judge.
Margot Kirchen appeals a trial court order which granted a final judgment of dissolution of marriage. We reverse.
At the time of the final hearing, Margot and Richard Kirchen had been married over fifteen years and had three sons, thirteen, eleven and six years of age. In June of 1984, immediately before the wife's annual trip to visit her family in Wisconsin, the husband announced that he wanted a divorce. The husband had prepared a handwritten *1309 agreement,[1] under which he agreed to provide the wife a rental agreement for a minimum of thirteen years during which she would be entitled to live in the marital home as a tenant at no cost in exchange for her one-half interest in the home. He also agreed to pay $600.00 per month child support; to provide major medical and hospitalization for the family and 50% of uncovered expenses; to transfer most of the personal property, including the family automobile, to the wife; to pay initial costs of enrollment for the children's schooling at a private school; and to set up an insurance trust with the children as beneficiaries. Paragraph 4 of the agreement stated that "the aforementioned financial conditions shall be incorporated in the final property settlement agreement which will be drafted by wife's attorney." The agreement also contains a statement that "aforementioned conditions are not to commence until August 15, 1984." Paragraph 6 stated "in consideration of a signed permanent property settlement which will contain the aforementioned all inclusive financial conditions, such agreement to be completed and signed by June 10, 1984... ."
The wife filed her petition for dissolution of marriage on August 20, 1984. In her petition and subsequently amended petition, she sought, inter alia, alimony. The *1310 husband answered and alleged, among other things, that the parties had entered into an agreement which set out the amount of support for the three children from the marriage, which also set out the amount of alimony, which, again, set out the insurance which would be provided by the husband, and which determined the parties' rights in regard to the marital home. The husband also counter-petitioned for dissolution, and requested that the agreement be confirmed and ordered incorporated into the final judgment of dissolution.
On February 20, 1985, Judge McDonald signed an order dissolving the marriage and reserved jurisdiction "to determine all remaining issues ... including whether the property settlement agreement is valid." One week later, Judge Roberts held a final hearing to resolve the remaining issues.
The facts relevant to this matter began when the parties moved to Lakeland from Wisconsin in 1979. Shortly thereafter, the husband became a vice president of an insurance company and still retains that position. In 1984, he earned $48,000.00. The wife stated that he also had an expense account which he had used for family entertainment purposes. At the time of the final hearing, the husband's net monthly income was approximately $3,000.00. He claimed expenses of approximately $3,700.00 per month, which included $300.00 per month for attorney's fees, $300.00 per month for an airplane lease and insurance, and $500.00 per month for the children's medical expenses and his own psychiatric care fees. His assets included one-half interest in the marital residence and a $4,700.00 IRA in which the wife did not claim an interest.
During the marriage, the wife had worked a total of approximately two and one-half years. Her only skills are secretarial. In November of 1984, she began working twenty-five hours a week as a secretary and billing clerk earning $4.00, and then $5.00 per hour. She did not work full time so that she could be with the three minor children. Both parties agreed that during the marriage they had discussed the wife's intention of returning to college when the youngest child started school. She estimated it would take two years to complete her education.
At the time of the final hearing, the wife had a net weekly income of $115.00 from her job, plus an additional $139.53 in child support, for a total of $254.53 per week. Her expenses were $304.61 per week. Her assets were a one-half interest in the marital home and some jewelry.
The parties had purchased the marital home for $59,000.00, and at the time of the final hearing it was worth approximately $85,000.00. The monthly principal and interest payment was $319.00 per month, and they owed $39,000.00 on the mortgage. The wife testified that she was unable to pay the costs of the divorce or her attorney to whom she owed $4,500.00. She stated that she needed her husband to contribute $1,400.00 per month for herself and the children in addition to her own salary.
The husband testified that the purpose of the handwritten agreement was for the benefit of the children. He wanted to make sure that housing, food and clothing for the children were taken care of because of his concern about the way that his wife handled finances. He was also concerned as to whether his wife would make the house payment. He wanted to make sure the children had a place to live until the youngest turned eighteen years old. He stated that if he conveyed the house to the wife, she would sell it and move to Wisconsin and take the children with her. He did not want the children to leave Polk County. He believed the provision would discourage the wife from moving with the children to be near her family in Wisconsin.
The husband stated that the wife had a copy of the agreement in her possession for two days before its execution. She told him that she took it to her attorney. After two days, according to the husband, she made various changes to the agreement to which he consented by crossing and initialing the changes. The wife also initialed the changes. At the time they executed the agreement, there was no coercion or *1311 duress, he and his wife probably had a drink together, and slept together that evening.
The husband testified that the first two pages of the agreement contained the terms of a permanent property settlement agreement, and the third page was merely a temporary agreement which was to have been in effect only until August 15, 1984. He did not want to pay alimony, but he did want the tax benefit of owning a rental home.
The wife testified that at the time she signed the agreement she believed a permanent agreement would be negotiated by their attorneys upon her return from Wisconsin. At the time the wife signed the agreement, her husband was aware that she had an attorney, but the wife did not have an opportunity to have her attorney review the agreement. They did not discuss her expenses or alimony in the agreement because she was going to be staying with her sister until her return to Florida on August 15, 1984.
On May 1, Judge Roberts entered an order in which she stated that the wife "failed to carry her burden of proof in establishing her defense of coercion/duress to the ratification and approval of the property settlement agreement." The order then directed the husband to pay child support and "alimony in the manner described in [the agreement]."
On appeal, the wife argues that the agreement was not a property settlement agreement. We agree.
A true property settlement agreement is not subject to modification by the trial court without the consent of the parties. Cannon v. Morris, 407 So.2d 372, 373 (Fla. 1st DCA 1981); Woodworth v. Woodworth, 385 So.2d 1024, 1026 (Fla. 4th DCA), petition for review denied, 392 So.2d 1381 (Fla. 1980). However, a trial court is free to modify an agreement which is not a pure property settlement agreement. See Witter v. Witter, 443 So.2d 417, 418 (Fla. 2d DCA 1984); Coffin v. Coffin, 368 So.2d 105 (Fla. 4th DCA 1979). In determining whether the parties intended to enter into a true property settlement agreement, the trial court must examine the plain language of the agreement, its surrounding circumstances and the parties' apparent purpose. Underwood v. Underwood, 64 So.2d 281, 288 (Fla. 1953); Woodworth, 385 So.2d at 1026. Furthermore, it is the actual content of the document which determines whether it is a true property settlement agreement. Cannon, 407 So.2d at 373.
In the inartfully drafted document which is before us, it is virtually impossible to determine the intent of the parties regarding the division of marital property from the plain language of the agreement. Although the title of the document does not determine the nature of the agreement, this document is not even identified as a property settlement agreement, which would be one indicia of the parties' intent. See Woodworth, 385 So.2d at 1026.
The best indication of the parties' intent regarding this agreement is gleaned from the husband's own testimony. He stated that the purpose of the agreement was for the benefit of the children. He was concerned about the provision of housing, clothing and food for the children because of his wife's past difficulties in handling their finances. He also wanted to prevent his wife from selling the house and moving back to Wisconsin with the children. That the intent of this agreement was for child support is further bolstered by the fact that the provision allowing the wife to live in the house rent free terminated when the parties' youngest child reached eighteen years of age.
We hold that the trial court's interpretation of this agreement as a property settlement agreement was clearly erroneous. Howard v. Howard, 467 So.2d 768, 770 (Fla. 1st DCA 1985). Rather than being a final agreement which divided the marital property of the parties, the agreement and the provision regarding the wife's tenancy in the marital home in particular was an incident pertaining to child support. Cannon. *1312 See also Farkas v. Farkas, 426 So.2d 1213 (Fla. 4th DCA 1983).
The husband also argues that under paragraph 2(a) of the agreement, the wife's conveyance of her one-half equity in the marital home in exchange for entitlement to live in the residence as a tenant at no cost combined with the other provisions of the agreement, were not unfair to the wife. We note that there are numerous other difficulties in interpreting this agreement. The document is replete with ambiguities and conflicting provisions. The substantive terms regarding child support and insurance do not even define for what period of time the husband is obligated under these provisions. Additionally, the wife's request for alimony has not been adequately disposed of by the trial court.
In the husband's answer to the petition for dissolution, he alleged that alimony had been provided for in the agreement. Yet at the hearing, he stated that the provision regarding the marital home was "to circumvent that issue." On appeal, the husband argued that the terms of the agreement barred an award of alimony. The trial court's final order stated that the husband was to pay alimony "as provided for in the agreement."
After carefully scrutinizing the agreement, we cannot find any provision which specifically provides for an alimony award to the wife. It is evident from the court's order that the judge found the wife was entitled to alimony. Therefore, the judge either construed the provision regarding the marital home as an alimony award, or overlooked the fact that there was no alimony provision in the agreement.
If the court construed that paragraph as an alimony provision, then the provision was subject to modification by the court. If the court erroneously overlooked the fact that the agreement did not contain an alimony provision, then the wife is entitled to a ruling on this issue. Although the husband argued that the agreement barred an award of alimony, a final settlement of alimony rights must be specifically expressed by clear language which evidences an intent to waive all such rights in the future. Newsome v. Newsome, 456 So.2d 520, 522 (Fla. 1st DCA 1984); Wolfe v. Wolfe, 424 So.2d 32, 33 n. 1 (Fla. 4th DCA 1982). See also Campbell v. Campbell, 220 So.2d 920 (Fla. 4th DCA 1969). In this case, the agreement did not expressly mention or waive the wife's alimony rights.
Accordingly, we reverse the trial court's judgment, and upon remand direct the court to conduct further proceedings under section 61.14, Florida Statutes (1983), consistent with this opinion.
Reversed and remanded with instructions.
LEHAN and HALL, JJ., concur.
NOTES
[1] (Ellipses mark areas which were crossed out in the handwritten agreement).

AGREEMENT
It is hereby agreed between Richard F. Kirchen hereinafter referred to as husband and Margot A. Kirchen hereinafter referred to as wife that:
1. The parties agree to live separate and apart for an unknown period of time. They desire to be free from interference of each other during said time.
2. The husband agrees to provide support as follows:
a) The husband, in exchange for deed to residence located 4062 Stonehinge Rd., Mulberry, Fla., agrees to provide a rental agreement for a minimum of 13 years for wife. Wife will be entitled to live in the residence as tenant at no cost as relates to mortgage payment, taxes, insurance and maintenance. Wife agrees that these costs are borne by the husband in exchange for wife's equity in same residence.
b) Husband will pay monthly child support in the amount of $600 to be paid in two equal installments on the 15th and 30th.
c) Husband will provide major medical and hospitalization for the family ... and 50% of uncovered expenses including dental, optical and orthodontic.
d) Husband agrees to ... transfer right of title to... all personal property including the family automobile with the exception of 1 waterbed, bedroom TV, VCR, video camera and stereo system.
e) Husband agrees to pay initial costs of enrollment due on August 1, 1984 to be paid no later than August 9.
f) Husband agrees to continue life insurance naming the children as beneficiary in trust with the 1st National Bank of Lakeland as trustee.
g) Husband agrees to pay ... mortgage, taxes, insurance, ... child support ... and medical and dental bills which are ... reasonable and necessary.
3. The parties agree to the aforementioned financial conditions and agree that the aforementioned financial conditions are all inclusive... .
4. The parties agree that the aforementioned financial conditions shall be incorporated in the final property settlement which will be drafted by wife's attorney.
5. See page 3 of 3.
The parties agree this 7th day of June, 1984.
 [signature]
 Richard F. Kirchen, Husband
 [signature]
 Margot A. Kirchen, Wife
5. The aforementioned conditions are not to commence until 8/15/84.
6. In consideration of a signed permanent property settlement which will contain the aforementioned all inclusive financial conditions, such agreement to be completed and signed by June 10, 1984, husband agrees to
a) Make payment of $600 per month child support payable semi-monthly until 8/15/84.
b) Continue medical and life insurance as well as reasonable and necessary medical and dental bills until 8/15/84.
c) Payment of initial tuition fees and costs which are necessary for initial enrollment and acceptance .. . and which is due as of August 1, 1984.
d) Payment of reasonable and necessary gas, oil and maintenance charges by wife under Mobil credit card not to exceed $50 monthly unless emergency repairs are necessary for safety and operation from June 13, 1984 through August 15, 1984.
e) Husband shall have use and possession of residence until at least 8/15/84.
f) Parties agree not to sell, mortgage, encumber intentionally damage or remove any personal property located within the marital home until 8/15/84.
The parties agree this 7th day of June, 1984.
 [signature]
 Richard F. Kirchen
 [signature]
 Margot A. Kirchen