**In re Charles J. BATTAGLIA, Jr., Debtor.**

**Charles J. Battaglia, Jr., Plaintiff,**

v.

**Patsy Battaglia, Defendant.**

**Patsy Battaglia, Counter–Plaintiff,**

v.

**Charles J. Battaglia, Jr., Counter–Defendant.**

**Bankruptcy No. 8:00–BK–09380–KRM. Adversary No. 04–00312.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 9, 2005.

Diane Shea Williams, Sanchez and Williams PL, Tampa, FL, for Debtor.

## MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT REGARDING DISCHARGE OF LUMP SUM ALIMONY

K. RODNEY MAY, Bankruptcy Judge.

THIS CASE came on for hearing on cross motions for summary judgment filed by the debtor (Document No. 29) and by the defendant, the debtor's former spouse (Document No. 37).

This proceeding arises from a 1996 divorce judgment, which has been contested for more than eight years, and from Mr. Battaglia's intervening bankruptcy case. He filed this adversary proceeding after reopening his Chapter 7 case.[1]

The debtor seeks an injunction and sanctions against his former wife, to prohibit her from collecting "lump sum alimony" awarded in the divorce proceeding.[2]

---

1. The Chapter 7 case was closed on June 19, 2001. The case was re-opened on April 9, 2004, for the limited purpose of allowing the debtor to file this adversary proceeding, which he did on May 20, 2004.

2. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a

He asserts that the "lump sum alimony" is in the nature of a property settlement obligation and was discharged in his Chapter 7 case. Therefore, he argues, the former wife's collection efforts violate the statutory "discharge" injunction. 11 U.S.C. § 524(a). The former wife contends that the obligation is in the nature of alimony or support and was not discharged; the debtor counters that she is collaterally estopped from contesting the dischargeability of this debt, which he argues has already been determined in post-judgment proceedings in state court.

The Court has considered the record in the Chapter 7 case, the motions for summary judgment and the exhibits and supplements thereto, as well as argument of counsel. For the reasons set forth below, the Court denies both motions for summary judgment and directs the parties to return to the divorce court to obtain a clarification of whether the award of "lump sum alimony" was intended to function, at least in part, as support for the former wife.

## BACKGROUND

The parties were divorced on December 26, 1996, nearly four years before Mr. Battaglia filed this Chapter 7 case. A Final Judgment of Dissolution of Marriage (the "Final Judgment"), was entered by the Circuit Court for Hillsborough County after a trial.

The Final Judgment provided for a division of property (Paragraphs 7–13) and required the debtor to pay:

(a) four levels of child support, of up to $790.62 per month, for four minor children, then ages 12 to 17, with specified reductions as each child reached majority or graduated from high school;

(b) "permanent periodic alimony" of $300.00 per month, commencing January 1, 1997, and continuing until the former wife died or remarried; and

(c) "lump sum alimony" in the amount of $27,826.00 plus 10% interest per year, payable at $300.00 per month commencing August 1, 1998.[3]

The Final Judgment distinguishes between "lump sum alimony," dealt with in Paragraph 14, and "permanent alimony," dealt with separately in Paragraph 15. Paragraph M of the Final Judgment recites that the award of "permanent alimony" is the result of the Court's consideration of the length of the marriage, Ms. Battaglia's contribution to the marriage, her severe need for assistance, and the husband's ability to pay.

Paragraph 14 of the Final Judgment reads in pertinent part:

The above distribution [Paragraphs 7–13] leaves the Husband with a net worth of $70,422.00 and the Wife with a net worth of $23,259.00. In addition, this distribution does not reflect the Husband's dissipation of the Putnam Account of $8,500.00. The Wife is therefore entitled to lump sum alimony of $27,826.00 *in order to effect an equitable distribution of the assets and in order to secure the Wife's economic future.* (emphasis added)

*The Former Husband's Bankruptcy Case*

On June 15, 2000, Mr. Battaglia filed a petition for relief under Chapter 7. He

---

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

**3.** The lump sum alimony does not terminate upon the former wife's re-marriage or death.

listed his former wife as a general unsecured creditor holding a claim of $33,000.00 (principal plus accrued interest) for a "1996 property settlement." According to the parties, the debtor has never made any of the lump sum alimony payments. The former wife appeared at the debtor's Section 341 creditors'. meeting, but she did not file an adversary proceeding to determine the dischargeability of the lump sum alimony. *See* 11 U.S.C. § 523(c); Fed. R. Bankr.P. 4007(c). The debtor received his discharge on September 19, 2000.

*The Post–Judgment Proceedings in State Court*

The Final Judgment provided that the lump sum alimony payments were to be made through the Central Governmental Depository, by an Income Deduction Order. On April 14, 2000, the state court entered an order modifying the Final Judgment, to provide that "lump sum alimony should not be subject to the income deduction order." The debtor contends that this modification was to correct the erroneous treatment of the lump sum alimony as support; [4] but, the divorce court's order itself does not explain why this modification was made or what issues the court considered. The former wife was not represented by counsel in connection with the modification of the Final Judgment.

On April 3, 2001, the divorce court entered another post-judgment order, this time denying the former wife's motion to hold the debtor in contempt. The divorce court ruled that "[t]he Former Husband . . . cannot be held in contempt regarding the lump sum alimony as the same was discharged in bankruptcy." The order sets forth no findings or reasons why the

court regarded the obligation as having been "discharged." Again, the former wife was not represented by counsel.

On or about March 26, 2003, the former wife filed a complaint in another state court, the Circuit Court for Pasco County where she now resides, again seeking to hold the debtor in contempt for failing to pay the lump sum alimony.[5]

On September 21, 2004, the Pasco County Circuit Court dismissed her complaint, with prejudice, finding that the lump sum alimony "was an award of property pursuant to the trial court's equitable distribution plan." The court also found that a payor cannot, as a matter of law, be held in contempt for the non-payment of a property distribution. The hearing was "non-evidentiary" and the former wife was not represented by counsel. This order is currently on appeal.

## DISCUSSION

An obligation arising from the dissolution of marriage is not dischargeable so long as it is in the nature of alimony, maintenance or support. 11 U.S.C. § 523(a)(5). Other, non-support, obligations arising from dissolution of marriage may be non-dischargeable as well, but only if an action to determine the dischargeability of the obligation is timely brought in the bankruptcy court (i.e., within 60 days from the first scheduled Section 341 meeting of creditors) and the bankruptcy court declines to make either of the determinations required by 11 U.S.C. § 523(a)(15)(A) or (B).

■ In this case the deadline to seek a ruling that the "lump sum alimony" is

---

4. The debtor argues that under Florida law only support obligations are to be payable by income deduction through the state disbursement agency. *See* § 61.1301, Fla. Stat.

5. Under Section 61.17, Fla. Stat., a person seeking to enforce payment of support may do so in the Circuit Court for the jurisdiction where such person resides.

dischargeable under Section 523(a)(15) has long since passed. The only issue is whether the lump sum alimony is in the nature of support. State courts have concurrent jurisdiction over that issue. *Cummings v. Cummings*, 244 F.3d 1263, 1267 (11th Cir.2001).[6]

■■■ The Eleventh Circuit has articulated the applicable legal standard:

.... Whether a given debt is in the nature of support is an issue of federal law. Although federal law controls, state law does provide guidance in determining whether the obligation should be considered 'support' under § 523(a)(5). To make this determination a bankruptcy court should undertake a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support. The court must therefore look beyond the label to examine whether the debt actually is in the nature of support or alimony. A debt is in the nature of support or alimony if at the time of its creation the parties intended the obligation to function as support or alimony.

*Id.* at 1265 (citations omitted).

In *Cummings*, the Eleventh Circuit reversed the bankruptcy court's determination that a $6.3 million divorce obligation (to be paid in three $2.1 million installments) was not alimony or support, even though the divorce court had expressly denied the wife any permanent alimony. The Court of Appeals noted that although the bankruptcy court had considered various relevant "factors" in reaching its decision, it had "failed to take into account the intent of the divorce court as reflected in the Divorce Judgment." *Id.* at 1266.

In so holding, the Court of Appeals observed that the divorce court's denial of permanent alimony was premised on its stated belief that the former wife could support herself, and her children, with the proceeds of the equitable distribution. *Id.* Thus, the divorce decree itself revealed that "at least some portion" of the equitable distribution to Mrs. Cummings was to *function* as support. *Id.*

*Cummings* illustrates the problem: the separate categories of "support" and "equitable distribution of property" may well overlap. The need for on-going support may "depend on how much property the less well-off spouse is given outright." *Werthen v. Werthen (In re Werthen)*, 329 F.3d 269, 273 (1st Cir.2003) (upholding bankruptcy court's determination that an obligation labeled by divorce court as a property division, awarded in addition to child support payments, was intended to function as child and spousal support and therefore non-dischargeable); *See also Wright v. Wright (In re Wright)*, 184 B.R. 318 (Bankr.N.D.Ill.1995) (finding divorce court's award of lump sum of $135,000, in addition to "support" of $5,500 per month, was in the nature of alimony where state court had expressly observed that former wife would need a portion of the $135,000 for her support).

A. *The Debtor's Motion for Summary Judgment*

■■■ The debtor seeks summary judgment on the basis of the doctrine of collateral estoppel. In order to give collateral estoppel effect to a state court judgment, a bankruptcy court must apply that state's law of collateral estoppel. *See St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 676 (11th Cir.1993). Under Florida law, the party relying on the doctrine must

---

**6.** Bankruptcy courts have exclusive jurisdiction to determine whether a non-support obligation is dischargeable. 11 U.S.C. § 523(a)(15) and (c).

show that: (1) the identical issue has been fully litigated, (2) by the same parties, and (3) a final decision has been rendered by a court of competent jurisdiction. *In re Zoernack,* 289 B.R. 220, 226 (Bankr.M.D.Fla.2003)(citing *Community Bank of Homestead v. Torcise,* 162 F.3d 1084, 1086 (11th Cir.1998)). The record in this case, however, fails to demonstrate that the threshold issue required for a determination of dischargeability (i.e., whether the divorce court intended at least some portion of the lump sum alimony to function as support) was actually litigated in the post-judgment proceedings.

For example, the first post-judgment proceeding, where the Final Judgment was modified to remove the lump sum alimony from the income deduction order, took place before the husband filed for Chapter 7 relief. It is unlikely that the former wife or the divorce court contemplated the dischargeability issue at that time. *See Cummings,* 244 F.3d at 1265. In the absence of a transcript of the hearing, this Court is unable to determine why the divorce court changed the mechanism for payment of the lump sum alimony, or whether it considered the extent, if any, to which its award of lump sum alimony was to function as support. *See Smith v. Smith (In re Smith),* 263 B.R. 910, 918 (Bankr.M.D.Fla. 2001) (declining to draw the inference, due to the absence of transcripts, that the issuance of a writ of garnishment, where state law exempts alimony from garnishment, necessarily meant that lump sum alimony was not to function as support).

The former wife was not represented by counsel at the hearing on February 9, 2001, which led to the second post-judgment order. It is not clear why the divorce court stated, in its April 2001 order, that the obligation to pay lump sum alimony had been discharged in bankruptcy. Again, the transcript of the hearing is not in the present record. As a result, this court cannot discern whether the divorce court actually considered the function of the award of lump sum alimony, or whether the divorce court accepted the discharge as a "given" based on argument of counsel.

The transcript of the non-evidentiary hearing in the Pasco County Circuit Court is in the record; but, it clearly reveals that the court did not undertake the required functional analysis of the divorce court's award of lump sum alimony. Again, the former wife was not represented by counsel.

B. *The Former Wife's Motion for Summary Judgment*

█ The Court will also deny the former wife's motion for summary judgment. Essentially, she restates her severe need for funds and the debtor's ability to pay as bases for arguing that the divorce court must have intended the lump sum alimony to be for her support. Further, she argues that the debtor engaged in a fraudulent scheme during the divorce proceedings to conceal assets, including the allegation that he was the actual owner of "his father's" business. Her motion and these allegations raise disputed factual issues which are not appropriate for summary judgment.

C. *Deference to State Court*

█ The intention of the divorce court is not readily discernable from the Final Judgment. On the one hand, the award of lump sum alimony is linked to the calculation, in Paragraphs 7 through 13, of the disparity in the assets and liabilities; only the award of "permanent alimony" is linked to the wife's severe need for support and the husband's ability to provide that support; the amount of the lump sum alimony, $27,826.50, is said to be made to precisely equalize the parties' respective net worths; and, the lump sum alimony is

neither modifiable, nor is it terminable on death or remarriage. These factors suggest that the obligation is a property settlement.

On the other hand, the divorce court highlighted the disparity of the parties' incomes and initially required the lump sum alimony to be paid through an income deduction order; the monthly installments of "lump sum alimony" were not to begin until after a reduction of child support when the parties' second child attained majority; and, Paragraph 14 of the Final Judgment provides that the lump sum alimony award is made to "secure the wife's economic future." All of these factors suggest that at least some portion of the lump sum alimony may have been intended by the divorce court to function as spousal support.

■ When a divorce decree is crafted by a state court after a trial, as in this case, and there have been post-judgment proceedings interpreting or enforcing the divorce decree, the divorce court is in a better position to determine the extent, if any, to which it intended the lump sum alimony to function as support.[7] In this case, there is also an appeal pending from the other state court's ruling on the Final Judgment. In these circumstances, it would not be appropriate, or even helpful to the parties, for this court to pronounce its interpretation of the intent of the divorce court.

In *Cummings*, the Court of Appeals suggested that the bankruptcy court might choose to await clarification by the state court regarding the function of the obligation at issue. The Court of Appeals also advised bankruptcy courts to avoid incur-

sions into such state court matters. 244 F.3d at 1266.

Accordingly, this court will defer further proceedings, so that the parties may return to the divorce court to seek a ruling on the extent, if any, to which the award of lump sum alimony was intended by that court to function as spousal support.

## CONCLUSION

The threshold issue to a determination of dischargeability is whether the original divorce court's award of lump sum alimony was intended to function, in whole or in part, as support for the former wife. On the present record, this court is unable to conclude that that issue was actually litigated in the post-judgment proceedings in state court. Nor is this court able to conclude, on this record, that the divorce court necessarily meant for the lump sum alimony to be in the nature of support. Therefore, both motions for summary judgment are denied.

The court will defer its own determination of the nature of the lump sum alimony to allow the parties to return to the divorce court for a clarification of whether the award of lump sum alimony was intended by that court to function, at least in part, as spousal support. The court will enter separate orders consistent with this opinion.

The trial in this adversary proceeding shall be abated until the divorce court has ruled on this issue.

---

7.  In those instances where a divorce decree is based on the parties' settlement agreement, this court can hear their testimony and deter-mine the parties' shared intent at the time the agreement was made. *See In re Smith*, 263 B.R. at 918, n. 8.